# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE DESHAWN BARNES,<br><br>    Plaintiff,<br><br>    v.<br><br>HANFORD SUPERIOR COURT JUDGE, et al.,<br><br>    Defendants. | Case No. 1:20-cv-00390-AWI-SAB<br><br>ORDER GRANTING PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT<br><br>(ECF No. 16)<br><br>THIRTY-DAY DEADLINE |

Antoine Deshawn Barnes ("Plaintiff") is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's first amended complaint, filed April 15, 2020.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915. Plaintiff is in the custody of the Kings County Sheriff. It is unclear whether Plaintiff is a pretrial detainee, however in his most recent motion to proceed *in forma pauperis*, Plaintiff states that he will be transferring to prison soon. (ECF No. 9.) Plaintiff's complaint is vague and composed mainly of argument. The Court recites the facts contained within the first amended complaint ("FAC").

Plaintiff was on suicide watch in cell 7 and was being watched by a black nurse. Nurse Mattos stated in her report that she was sitting outside cell 5 watching inmate Anderson who was on suicide watch.

///

Plaintiff had a preliminary hearing in case no. 18cm5115[1] on February 10, 2020. Judge Roberts, the Kings County Prosecutor, and Plaintiff's attorney, Mr. Trevino, asked Nurse Mattos, who was under oath, three times if she was the exact nurse sitting outside Plaintiff's cell on the day of the alleged 314.[2] Three times Nurse Mattos stated that she was the nurse. Judge Roberts stated on the record that he believed her and found Plaintiff guilty of a 314.[3] Judge Roberts did not have a CDCR report contradicting Nurse Mattos testimony.[4] Plaintiff alleges that Nurse Mattos was sitting three cells away and Judge Roberts allowed her to commit perjury.

Nancy Pelosi sent Plaintiff an email asking him for a favor in President Trump's impeachment. Plaintiff sent her an email in return asking her to vacate his case and have the Federal Bureau of Investigation do an investigation of Judge Roberts and the Kings County District Attorney's Office. A few days later, Plaintiff was remanded into custody and denied release on his own recognizance.

Plaintiff had a judge by the name of Roberts in an old case in Hayward that was heard in the Superior Court of Alameda County and a case in the Salinas Superior Court. Now, this is the third Judge Roberts that has sat on one of Plaintiff's cases.

Plaintiff brings this action against Judge Roberts and the CCPOA District Attorneys Union alleging violation of the Fifth, Eighth, and Fourteenth Amendments, malicious prosecution and double jeopardy. He is seeking one million dollars and for the court to immediately order the Federal Bureau of Investigations to conduct a field investigation inquiry into the "CCPOA plot, conspiracy of CDCR's involvement in all district attorneys unions listed

---

[1] In an April 3, 2020 screening order granting Plaintiff leave to file an amended complaint, the Court took judicial notice of Plaintiff's criminal case proceeding in the Kings County Superior Court. See Superior Court of California, County of Kings, Case Information for 18CM-5115, The People of the State of California v. Antoine D. Barnes, available at https://cakingsportal.tylerhost.net/CAKINGSPROD/Home/WorkspaceMode?p=0, search case no. 18cm5115 (last visited April 17, 2020).

[2] The Court assumes that Plaintiff is referencing section 314 of the California Penal Code which prohibits "willfully and lewdly" exhibiting a person or his private parts where there are others present to be offended or annoyed. Cal. Pen. Code § 314.

[3] Although Plaintiff states that Judge Roberts found him guilty, the preliminary hearing finding determined whether there was sufficient evidence for Plaintiff to be bound over for trial and the charges that will be tried. People v. Lopez, 26 Cal.App.5th 382, 389 (2018), as modified (Aug. 20, 2018).

[4] It is unclear whether this was a statement made by Judge Roberts.

in this amended complaint." (FAC 8, ECF No. 17.)

## III.

## DISCUSSION

Plaintiff's vague and conclusory allegations of plots, hate crime, conspiracy, retaliation, malicious prosecution, and double jeopardy are not sufficient to state a claim in this action. As Plaintiff was previously advised in the April 3, 2020 screening order, he cannot state a claim by setting forth conclusory allegations that are unsupported by any factual allegations.

> Under Twombly and Iqbal "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. Id. Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555. Finally, the conclusory allegations in the complaint are not entitled to the presumption of truth. Iqbal, 556 U.S. at 681. In other words, Plaintiff's amended complaint must contain sufficient factual allegations that would allow the court to reasonably infer that the defendant is liable for the conduct alleged.

(Screening Order Granting Plaintiff Leave to File Amended Complaint 11, ECF No. 14.)

In his first amended complaint, Plaintiff has set forth minimal factual allegations and claims that Nurse Mattos was coerced and bribed into "being one of many promiscuous, scorned females in connection on having sexual favors on getting paid gifts, bribes, cash, thru CCPOA male CDCR 'Greenwall Gang Officers' to help keep 'job security' in retaliation on illegally paying scorned promiscuous like Mattos to falsify documents District Attorneys Office(s) to illegally make inmate men fall victim of circumstances that arent 290 sex offenders, arent child molestors, nor rapists, behind a 'corrupt web' that CCPOA 'built' in 'retaliation' to keep innocent men/nonviolen 'intrapped' in prisons because CCPOA unions got mad that petitioner helped Governor Jerry Brown before he retired put funds toward"[5] Proposition 57 and that lawsuit needs to put a stop to abuse of power hate crime. (FAC 1.)

---

[5] Grammatical and spelling errors were in original document.

### A. Absolute Judicial Immunity

In his original complaint, Plaintiff was bringing suit against the unidentified judge that ordered him detained and he was provided with the legal standard for absolute judicial immunity. In his first amended complaint, Plaintiff brings a claim against Judge Roberts who is the Superior Court judge that presided over his preliminary hearing.

Absolute judicial immunity is afforded to judges for acts performed by the judge that relate to the judicial process. In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002), as amended (Sept. 6, 2002). "This immunity reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004) (quoting Bradley v. Fisher, 13 Wall. 335, 347 (1871)). This judicial immunity insulates judges from suits brought under section 1983. Olsen, 363 F.3d at 923.

Absolute judicial immunity insulates the judge from actions for damages due to judicial acts taken within the jurisdiction of the judge's court. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.' " Id. (quoting Cleavinger v. Saxner, 474 U.S. 193 (1985)). However, a judge is not immune where he acts in the clear absence of jurisdiction or for acts that are not judicial in nature. Ashelman, 793 F.2d at 1075. Judicial conduct falls within "clear absence of all jurisdiction," where the judge "acted with clear lack of all subject matter jurisdiction." Stone v. Baum, 409 F.Supp.2d 1164, 1174 (D. Ariz. 2005).

To determine if an act is judicial in nature, the court considers whether (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity. Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (quoting Meek v. County of Riverside, 183 F.3d 962, 967 (9th Cir. 1999)).

1    Here, Plaintiff alleges that Judge Roberts heard the testimony of Nurse Mattos during a
2 preliminary hearing and stated that he found it credible despite not having a report that Plaintiff
3 claims contradicts her testimony. Determining the credibility of witness and making a finding of
4 whether the evidence is sufficient for a criminal defendant to be bound over for trial is clearly
5 within the normal judicial functions of the judicial officer. As the judicial officer presiding over
6 the preliminary hearing, Judge Roberts is entitled to absolute judicial immunity from damages
7 for his findings made during the hearing. Plaintiff cannot state a claim against Judge Roberts for
8 finding Nurse Mattos credible and that Plaintiff should be held over for trial during the
9 preliminary hearing.

10    Plaintiff states that a Judge Roberts presided over a case in Hayward, California in the
11 Superior Court of Alameda County and a case in Salinas Superior Court. Plaintiff states that this
12 is the third time a judge by the name of Roberts has presided over his criminal case. He contends
13 that there is a conflict of interest because a third Judge Roberts is presiding over his current case
14 in Hanford Superior Court. Plaintiff fails to allege any facts to state a claim that Judge Roberts is
15 presiding over his criminal action in clear absence of jurisdiction. Judge Roberts is entitled to
16 absolute judicial immunity for the actions alleged in the complaint.

### B. State Actor Requirement

18    Plaintiff brings this action against the CCPOA District Attorneys Union alleging a vague
19 conspiracy between law enforcement officials and the Union to file false charges against
20 individuals to keep them in custody.

21    To state a claim under section 1983, Plaintiff is required to show that (1) each defendant
22 acted under color of state law and (2) each defendant deprived him of rights secured by the
23 Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.
24 2006). In order to recover under section 1983 for conduct by the Union, Plaintiff must show
25 "that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the
26 State." Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010)
27 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). Generally, private parties do
28 not act under color of state law. Price v. State of Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).

6

1 The state-action element of section 1983 "excludes from its reach merely private conduct, no
2 matter how discriminatory or wrongful." Caviness, 590 F.3d at 812 (quoting Am. Mfrs. Mut.
3 Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). State action is only found where there is such a
4 close nexus between the state and the challenged action that seemingly private action can be
5 fairly treated as that of the state. Caviness, 590 F.3d at 812.

6       A defendant acts under color of state law under section 1983 where he has "exercised
7 power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed
8 with the authority of state law.' " West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States
9 v. Classic, 313 U.S. 299, 326 (1941)). This does not require that the defendant be an employee
10 of the state, but he must be "a willful participant in joint action with the State or its agents.
11 Private persons, jointly engaged with state officials in the challenged action, are acting see
12 'under color' of law for purposes of § 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27–28
13 (1980). Here, Plaintiff has not alleged that the CCPOA is a state actor. Rather, the CCPOA is a
14 private union that represents public employees. See California Correctional Peace Officers
15 Association website, located at http://www.ccpoa.org/.

16       A private party may be acting under color of law if they conspire with or engage in joint
17 activity with State officials (joint action test), become so closely related with the State that their
18 action can be said to be those of the State (government nexus test), are performing public
19 functions (public function test), or are regulated to the point that the conduct is compelled by the
20 State (state compulsion test). Price, 939 F.2d at 708-09; Single Moms, Inc. v. Montana Power
21 Co., 331 F.3d 743, 747 (9th Cir. 2003); see Pollard v. Geo Group, Inc., 607 F.3d 583, 590-91
22 (9th Cir. 2010); Blum v. Supreme Court, 457 U.S. 991 (1982).

23       Plaintiff contends that the CCPOA got mad that he had helped Governor Jerry Brown put
24 funds toward rehabilitation programs, drug programs, and Propositions 57 and 47 and not into
25 the hands of the corrupt CCPOA to building more prisons. He states that he is being racially
26 targeted and racial profiled by all CCPOA district attorneys, CDCR CCPOA, and judges because
27 they were against Proposition 57 and Senate Bill 10 that was approved and passed by Governor
28 Jerry Brown. Plaintiff's conclusory allegations of retaliation, conspiracy, and racial profiling

1  and targeting are not supported by any factual allegations in the complaint.

2  The basis of Plaintiff's claim in this matter is that Nurse Mattos falsified her testimony. Plaintiff's speculation, which does not appear to be fully based in reality, for the reason that Nurse Mattos provided what he considers to be falsified testimony is not sufficient to allege a conspiracy. Plaintiff has not alleged any facts that would allow the Court to reasonably infer that any individual or the CCPOA was involved in a conspiracy to procure falsified testimony. Plaintiff's conclusory allegations do not provide the required nexus to state a claim against the CCPOA under section 1983.

### C. Fifth Amendment

Plaintiff brings this action alleging violation of the Fifth Amendment. As Plaintiff was previously advised in the April 3, 2020 screening order, the Fifth Amendment does not apply to his claims in this action. (ECF No. 14 at 7.)

### D. Eighth Amendment

Plaintiff also alleges a violation of the Eighth Amendment. But again, Plaintiff was advised in the April 3, 2020 screening order that the Eighth Amendment does not apply to the claims raised in this action. (ECF No. 14 at 7.)

### E. Fourteenth Amendment

Plaintiff makes a vague allegation that his due process rights have been violated. Plaintiff was advised in the April 3, 2020 screening order that to state a claim under the Fourteenth Amendment he must identity the liberty or property interest at stake and the due process that he did not receive. (ECF No. 14 at 7-8.) Plaintiff's vague references to due process are insufficient to state a cognizable claim.

### F. Malicious Prosecution

Plaintiff contends that he was subjected to malicious prosecution. As Plaintiff was previously advised, a claim for malicious prosecution or abuse of process is not generally cognizable under Section 1983 if a process is available within the state judicial system to provide a remedy. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) (citations omitted). The exception is "when a malicious prosecution is conducted with the intent to deprive a person

of equal protection of the laws or is otherwise intended to subject a person to denial of constitutional rights." Id. (citations omitted).

In order to prevail on a Section 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995) (citations omitted); see also Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); Lacey v. Maricopa County, 693 F.3d 896, 919 (9th Cir. 2012). A malicious prosecution claim may be brought against prosecutors or against the individuals who wrongfully caused the prosecution. Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011). Probable cause is an absolute defense to malicious prosecution. Lassiter v. City of Bremerton, 556 F.3d 1049, 1054 (9th Cir. 2009).

In order to state a malicious prosecution claim, Plaintiff must show that the prior proceeding was commenced by or at the direction of the defendant and it was 1) pursued to a legal termination favorable to plaintiff; 2) brought without probable cause; and 3) initiated with malice. Ayala v. Environmental Health, 426 F.Supp.2d 1070, 1083 (E.D. Cal. 2006). For the termination be considered "favorable" to the malicious prosecution plaintiff, it must be reflective of the merits of the action and of the plaintiff's innocence of the charges. Villa v. Cole, 4 Cal.App.4th 1327, 1335 (1992).

Plaintiff has failed to name as a defendant any individual who caused the case to be prosecuted against Plaintiff with malice and without probable cause. Here, Plaintiff alleges that Nurse testified at his preliminary hearing that she was sitting outside his cell and he was held to answer on the charges. Further, Plaintiff has not alleged that the action against him has been terminated in his favor. From review of the docket in the state court action, the state court matter, 18cm5115, is still pending. Since the trial judge found that the evidence was sufficient to hold Plaintiff to answer and he is currently being prosecuted for the charge, it does not appear that Plaintiff can state a claim for malicious prosecution.

**G.     Double Jeopardy**

Plaintiff alleges that he is being prosecuted in violation of the double jeopardy clause.

The Double Jeopardy Clause precludes "a second prosecution for the same offense," and prevents "the State from 'punishing twice, or attempting a second time to punish criminally, for the same offense.'" Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (quoting Witte v. United States, 515 U.S. 389, 396 (1995)). "This constitutional guarantee provides three forms of protection: It prohibits 'a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.'" United States v. Enas, 255 F.3d 662, 665 (9th Cir. 2001) (quoting Dep't of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n. 1 (1994)).

In the April 3, 2020 screening order, Plaintiff was advised that the basis of his double jeopardy claim was unclear and that "the prohibition against double jeopardy does not bar criminal prosecution for conduct that has been the subject of prison disciplinary sanctions for two independent reasons: 1) even if the sanctions were 'punishment,' they were integral parts of [the inmate's punishment for his underlying offense]; and 2) the sanctions are not punishment for purposes of double jeopardy because they are solely remedial." United States v. Brown, 59 F.3d 102, 104 (9th Cir. 1995).

In his first amended complaint, Plaintiff alleges that the CCPOA paid all district attorneys to prosecute him for the same crime twice in Kern County, L.A. County, Monterey County, Alameda County, and now Kings County. However, Plaintiff has alleged that the incident involved in the complaint occurred in prison. (See ECF No. 14 at 2 (plaintiff was taken back into custody on January 29, 2020 due to allegations from an incident that occurred within prison three years ago).) Plaintiff is currently being held on these charges in Kings County. None of the counties listed would have jurisdiction to try him for an event that occurred in a prison in Kings County. To the extent that Plaintiff is alleging that he was charged for the same criminal conduct that occurred on different occasions the double jeopardy clause is not implicated.

Plaintiff pleads with the Court to read Gamble v. United States, 139 S. Ct. 1960 (2019), to support his double jeopardy claim. In Gamble, the Supreme Court refused to overrule the dual-sovereignty rule, which allows the prosecution of the same conduct by both federal and state authorities. 139 S. Ct. at 1980. Here, Plaintiff has not identified any other prosecution of

the charges that are the subject of the current Kings County criminal action that would implicate a double jeopardy claim.

To state a claim for violation of the double jeopardy clause, Plaintiff will have to demonstrate that he was previously prosecuted for the incident that is the subject of the current prosecution in Kings County Superior Court and that the prosecution resulted in an acquittal or a conviction.  Conclusory allegations are insufficient to state a claim.  Plaintiff must identify the prior case and the result of the prosecution.

### H.     Injunctive Relief

Plaintiff seeks an order directing the Federal Bureau of Investigation to conduct an investigation into the conduct of the CCPOA.  The Court may not attempt to determine the rights of persons not before it.  See Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35 (1916); Zepeda v. U.S. I.N.S., 753 F.2d 719, 727-28 (9th Cir. 1983).  Even if Plaintiff were to state a claim in this action, the allegations provide no basis for this Court to have jurisdiction to order the Federal Bureau of Investigations, who would not be a party to the suit, to conduct an investigation.

### IV.

### CONCLUSION AND ORDER

Plaintiff has failed to state a plausible claim against any named defendant for a violation of his federal rights.  Plaintiff shall be granted **one final opportunity** to file a second amended complaint to cure the deficiencies identified in this order.  Plaintiff should only amend those claims that he believes in good faith are cognizable.  His amended complaint should not include argument or references to case law, but should set forth those **facts** against each individual named as a defendant in the action that link that defendant to a violation of Plaintiff's federal rights.

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations

omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint; and

2. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to the district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:  **April 21, 2020**

_____
UNITED STATES MAGISTRATE JUDGE